Sibley v. Watches, 21-1986 28 days ago, on Saturday, May 14th, at the Topps Market in Buffalo, New York, we were gunned down by Roberta Drury, Marguerite Morrison, Andre McNeil, Aaron Salter, Geraldine Talley, Cicelyne Chaney, Hayward Patterson, Catherine Massey, Pearl Young, and Ruth Whitfield were gunned down by Peyton Gendron. I remember those dead to you today because this case, the instant matter, gives you a chance to revisit what I consider to be a very erroneous holding of this court in Kalachi v. County of Westchester, Filement 701 F3. In that case, this court held a generalized desire to carry a concealed weapon to protect one's person and property is insufficient to establish probable cause in New York for a concealed carry license and continued to say a person must demonstrate a special need for self-protection distinguishable from that of the general community. Are you suggesting that some of those Buffalo residents murdered? Pardon me, ma'am? Are you suggesting that the people murdered in Buffalo should have had guns to fire back? I am suggesting that they should have had the opportunity to apply for a concealed weapons permit and if they had, it would have been denied because they were simply citizens going about their daily business and under New York that is not sufficient as this court has held for a carry concealed permit. I'm puzzled by a couple of things. First, you're asking essentially for NBank reconsideration of the precedent of this court about the Second Amendment. Is that? Fair statement, yes. And of course, that might well be, we'll see what the Supreme Court has to say about that Second Amendment issue. Very soon. Maybe that will happen. But I thought that in this case, you had only appealed very specific rulings by the judge which concerned the vagueness as applied of the good moral character requirement. You didn't appeal the earlier rulings of the judge with respect to the Second Amendment and the constitutionality of the good cause requirement. What am I missing in thinking that we in this case don't have jurisdiction to review those rulings? You're missing my reply brief's response to that that I believe all of the orders of the district court were brought up for your review. But why? Based on what? The notice of appeal specifically references two orders. Right. And also the federal rules of appellate procedure which I cite in my reply brief expand that to all the below orders. But I really don't want to spend the very limited time I have here talking about your jurisdiction because you can go to that I'm interested in what you have to say about that. It is vague and in fact the vagueness is pointed out by the very ruling in the court below where the defendant licensing officer watches who coincidentally is a county court judge in Steuben County in his order denying my application for a pistol permit said quote upon readmission to the bar of New York Mr. Sibley may submit a new application for a pistol permit end quote. Take that statement and explain why he has said that. He said that because the law is so vague on moral qualifications for a concealed weapon that you can say anything you want. He thought he could say I can't have a possession of a weapon until I admit to the New York State Bar which I will candidly admit I have no intention of doing for the remaining days. He was wrong about that and the attorney general admitted he was wrong. And the fourth department admitted he was wrong and struck that provision. However, the fact remains he had the leeway to say that because there's no definitive question, no definitive definition of what good moral character is. Under New York law he did not have leeway to say that. But he thought he did. Well they thought he did but judges make mistakes all the time. Well they sure do. And they get corrected by the attorney general. Yeah but in this case the error is compounded by every single licensing officer in the state of New York because they have no direction from the legislature, the only place they can give it to them, as to what good moral character means. And in this case apparently it means you have to be a member of the bar in order to have a concealed weapon. No it doesn't mean that. We know it doesn't mean that because the fourth department said so. He thought he did because he had no direction from the legislature. But we do have a body of case law, don't we, that talks about good moral character and what it means. It's all vague and it doesn't make any sense. At the end of the day the fact that I filed maybe a frivolous preening here or there over a 35 legal career, all of a sudden that's no longer good moral character. How does that equate to someone who's had domestic child abuse? I believe I cite the Henry case out of this court. Allegations of that are actual physical violence but somehow that's not enough to take his pistol permit away. There's no definitiveness here. But more important than the void for vagueness, which you're going to land on one way or the other, the arguments are in front of you, more important is what happened in the procedure for adjudicating a pistol permit, a concealed weapons permit here. In that case, judge, defendant licensing officer denied the application stating, quote, and this is in appendix page 31, the investigation of the Steuben County Sheriff's Department was part of his decision. I have never seen that investigation. I do not know what it says. I asked for it in writing, he denied it. Appendix 31, 33 actually. I filed a FOIA lawsuit saying I would like to know what the sheriff said about me before I have my application denied or before I have to go forward with a hearing not knowing what was said about me. That is the real problem in this lawsuit is the procedure New York uses to take a license or not give a license to somebody based upon secret evidence. To this day, I do not know what it says. Maybe it says I'm a pedophile. Maybe it says I'm a wife abuser. I would like to know what those allegations are so I can refute them when I have my hearing at which judge watches refused discovery on everything I asked for. That is also in appendix 33. Mr. Sibley, listen, please. I've got some questions. Did you ever apply for a license to possess a handgun at home? At home, I couldn't. Because the application form, and it is in the record, requires you to choose one or the other. I am a nuisance wildlife control operator licensed by the state of New York. I kill zoonosis vector species on a regular basis. Understanding the back and forth with my colleague, Ms. Lynch, about the Second Amendment issue, at any point did you ever argue to the district court that New York's concealed carry licensing requirement violates the Second Amendment? Absolutely I did. It's in the original complaints and every single complaint I filed thereafter. Okay. But did you raise that as an argument, separate and apart from what's contained in the complaint? Yes, sir. At every brief, every chance I got to. Even at the oral argument I had before the Fourth Department. Yeah, so I just want to make that last point. I asked for discovery to prove my good moral character and I wanted to get subpoenas issued, doses taken, and also in person. He denied that application. So now I stand here, had to go to a hearing, didn't know what the evidence was against me, couldn't try to refute this vague claim that I was not a good moral character because I had no access to the subpoena power to bring in other witnesses. Now, I don't want to leave this podium without reminding you that for 79 days I sat in forum paupers waiting for my case to move forward with a 79 days. If you want to put your signature... Are you aware of any formal deadline by which he was required to rule on your informal paupers? You know as well as I do, Judge, there is no formal deadline for ruling on informed paupers. But this court is now sitting and they're going to put their signature on a piece of paper that says it's okay. Poor people can wait outside on Reed Street while the people who have money can walk in here and get their preliminary injunction heard like that. That is the real problem with this case. I see I'm well over and I don't want to take more time than I'm allotted. Thank you very much. We'll hear from the other side. I'm not even going to try to pronounce the name. So you pronounce it, Ms. Twyman? We can't hear you. You're either muted or something is wrong. Unmute. Can you unmute? Sometimes when you have a headset of this type on the handle there is a little red button. If you press that button that might change things. Can your honors hear me? I double as the IT guy. He's our IT person. I know that only because that happened to me recently. One of my law clerks who knew better told me to do that. He's sitting here. He knew that. He triples as a judge, an IT person, and as a victim. May it please the court, Alexandria Twynum on behalf of Appellee Chauncey Watches. I'd like to begin with the jurisdiction, the issue of what this court has jurisdiction to consider in this case. Appellee acknowledges that under the December 2021 amendments to Federal Rule of Appellate Procedure 3C, Mr. Sibley's notice of appeal would have been sufficient to raise all of the claims in his brief. However, that is not the rule that was in place in August 2021 when he filed his notice of appeal. Mr. Sibley has never argued before this court that it would be proper and just to retroactively apply that new rule that wasn't in effect at the time of his notice of appeal. Which is why, as we stated in our response brief, the only issues that are before the court are the decision on the dismissal of the fourth amended complaint and the motion for reconsideration. But the court doesn't need to reach the issue of whether to retroactively apply the new Rule 3C because all of Mr. Sibley's claims fail, even assuming that they are true. If Mr. Sibley was denied a carry permit in this case for refusing to follow judicial orders resulting in sanctions in 15 jurisdictions and suspension from the practice of law, a reasonable person would understand that his behavior demonstrated a lack of good moral character. That is, a lack of fitness to possess a firearm under New York's law because it demonstrated a lack of respect for the rule of law and sound judgment. It is clear that under New York law, good moral character is a narrowly cabined term of art and there are several sources we can look to for that. The first is the purpose of the statute which is to ensure public safety and prevent crime. The second is by looking at the other criteria contained in New York Penal Law section 400, including someone's age, their soundness of mind, and specifically respect for the rule of law, which is embodied in provisions such as requiring that an individual be present in the United States legally and not be a fugitive from justice when they're applying for a license. It's also found by looking at the types of behaviors New York courts have found to violate the good moral character requirement, such as lying to the police and driving while intoxicated, which likewise are aimed at looking at whether someone has respect for the rules of the United States and of the state of New York and ensuring that that person has sound judgment. Can I ask you about a question that Mr. Simley raised in his argument? Was his permit denied on the basis of a sheriff's order that was not made that he did not get to see? No, Your Honor. If you look at the decision that came from Judge Watches, the entirety of the decision is based on publicly available documents regarding his history of being sanctioned, as well as what Mr. Simley actually gave to Judge Watches indicating that he had been sanctioned in 15 jurisdictions and had been suspended from the practice of law. At no point in the entire decision does Judge Watches refer to anything that was told to him by the sheriff or any other information that Mr. Simley has previously claimed, for example, came from ex parte sources. And that goes to his procedural due process argument. And Mr. Simley fails to acknowledge that an Article 78 procedure under New York law has been found to give a sufficient amount of process by this court repeatedly because it allows an individual to raise any evidentiary concerns, for example, that they were not able to dispute the basis of the evidence on which a decision was made before a new neutral arbiter. And the Supreme Court of New York found that, in fact, he did not have a claim for due process. He may not like that decision, but he was given all the process due to contest any procedural issues that may have existed before Judge Watches. Thank you. With respect to the good moral character standard, is your argument that any conduct demonstrating disrespect for the rule of law violates that standard? That is likely too broad. However, that's not something that's before the court at this moment. It is certainly clear that an individual who has shown this degree of disrespect for the rule of law lacks good moral character and lacks fitness for a firearm. And there is no facial challenge to this provision as void for vagueness, both because this court has held that the good moral character requirement survives a facial challenge under Libertarian Party of Erie County v. Cuomo, and because regardless, Mr. Sibley's conduct falls squarely within what the statute is meant to encompass. And therefore, under this case's settled precedence, he does not have the ability to challenge hypothetical future applications of the statute. And what's your position as to what we should do about this pending Supreme Court decision? The court doesn't need to hold the case for the Supreme Court's decision, both because that is a Second Amendment challenge and here Mr. Sibley has abandoned his Second Amendment claims, and because that provision of New York law is entirely separate from the provision that's at issue here. But if this court is worried about the potential scope of a decision there, we have no objection to the court waiting and issuing a decision here after it's read that ruling. I'm happy to answer any further questions. Otherwise, Mr. Apley would rest on his brief. Thank you very much. Mr. Sibley, you've reserved a bit of time for rebuttal. One minute. Counsel, Ms. Twynum suggested that what you told us was not correct. I'm sorry, Judge, I didn't hear you. Ms. Twynum has told us that what you suggested to us was not correct, that the denial of the permit was based on a sheriff's report that you didn't see. She said it wasn't based on that. I believe she's incorrect, and I quote to you from page 31 of the appendix, the May 29th letter from the licensing officer to me. It says, your application to obtain a pistol permit has been submitted to me for my consideration. I reviewed your application and the investigation submitted by the Steuben County Sheriff's Department. The possession of a pistol permit is a serious responsibility. Therefore, the court takes such an application very seriously. He explicitly states he reviewed the investigation submitted. I haven't seen the investigation. Isn't this the letter that says now you're going to have a hearing? This is the letter that says now I'm going to have a hearing. He's denied it. Excuse me. And then there's a hearing, and then there's a ruling by the licensing officer that you don't get a license because of a lack of good moral character and reasons are given. Is that ruling in the appendix? Yes, sir. Okay. And can you tell us, point us to where in that ruling there is, because this would put her argument to bed very nicely, if there is some specific reference that I find that Mr. Sibley lacks good moral character because of facts that were in the sheriff's report. There is not that in his final order, but he's already made up his mind based upon something submitted to him. Why do you say he's made up his mind? Because he denies it. Excuse me. Please don't talk over me, and let me ask the question, then you can answer it. He says, I've reviewed this, I'm taking it seriously, and now we're going to have a hearing. Then we have a hearing. Then at the end of the hearing, the judge gives his reasons for denying the license. So why do you say that he's already made up his mind when he chooses to have a hearing, gives you a hearing, and then explains what may be, you know, as I say, these arguments as to why he's wrong, but none of those reasons that he gave either suggest that I didn't pay any attention at the hearing I made up my mind before, nor does it say, boy, if you knew what was in this sheriff's report, you would all agree that he shouldn't get a license, and there's nothing like that. Respectfully, there is. Let me read it to you from appendix page 31. No, no, no. That's the letter before the hearing. No, no. I didn't finish my quote. The first paragraph ends, therefore the court takes each application very seriously. Quote, your application for a pistol permit is denied. At that moment, he has made up his mind to deny it upon only two pieces of evidence, my written application and the sheriff's report. I have never seen the sheriff's report. It's in his brain, and he may not mention it when the final decision comes out January 10th, but he has already made up his mind, he already has evidence I have never seen, I have never had a chance to refute, and that simply cannot stand under your three signatures. But then he orders a hearing, doesn't he? Pardon me? Then he gives you a hearing, doesn't he? Well, a hearing of sorts, a hearing without any ability to conduct any subpoena, any evidence or any witnesses. But it's not a final decision. It is a final decision unless I take the next step. And I mentioned the Morgan case, the Supreme Court Morgan cases, where a judge can't make a decision and then say, okay, now I'll hear your side of the story. And that's what's another thing procedurally wrong with the state of New York. You're taking somebody's license, not their license, not their privilege, their absolute fundamental right to self-defense in the home and abroad from them on a procedure where they hear nothing and decide on secret evidence, and then they give you a hearing which you don't even know what he's heard. So how can you possibly refute that which he's already heard and already made up his mind upon? All right. Thank you very much. Full reserve decision has been very helpful. That concludes today's arguing calendar. I'll ask the Courtroom Deputy to adjourn the Court. Thank you, Mr. Sibley. Thank you, Ms. Kleinert. The Court stands adjourned.